Good morning, your honors. Matt Campbell from the Federal Defenders of Eastern Washington and Idaho on behalf of Mr. Ivers, and we'll be trying to reserve two minutes. This case presents three interrelated violations, both factually and legally. The first is that the officer secured a general warrant, which was both overbroad and lacking in particularity. That warrant allowed them to enter into Mr. Ivers' apartment, which led to a custodial interrogation in violation of Miranda. And ultimately, the seizure of materials, which were held for an unreasonable period of time in violation of both the Fourth Amendment and Rule 41. I'd like to focus my argument today on the more purely legal arguments, beginning with the unreasonable delay issue. Even if the seizure of the computer… Can I ask you something about that? Certainly. I once had a client who had her pickup truck taken because there might be evidence that somebody else who borrowed her pickup truck had used it to commit a murder. And that was fine, no problem at all. Took her pursuant to a warrant, and then they didn't give it back. And a year later, she still doesn't have her pickup. So I just made a Rule 41 motion for her to get her pickup truck back and got it back. What's the problem with the delay when you can just make a Rule 41 motion and get the property back in a reasonable time? Well, Your Honor, I would say two different issues there. Number one, as we briefed under the Mitchell case, the Doss case, and the like, I think the violation is essentially complete at the time that the seizure has become unreasonable. Well, there are some things you don't care how long the cops hold on to them, and there are some things where it's a real nuisance. And if it's a nuisance, you can just – why can't you just make a Rule 41 motion? Your Honor, certainly one could do that. But, again, the primary argument would be that… So your argument is not that anything prevented the defendant from doing that, just that he doesn't have to in order to assert his right to get his property back in a reasonable time? I would argue that point, but I would also argue that, based on the record, Special Agent Floyd had conversations both with Mr. Ivers and subsequently with his wife approximately one month after the initial seizure in which he said that it will take three to six months. Now, ultimately it took 17 months, but he explained to them, you know, we need to search these things, it will take this amount of time. Look, let's assume for purposes of discussion that they underestimated how long it would take and they wound up taking an unreasonable amount of time. I still don't see why it's a problem if a Rule 41 motion was available in order to goose them along a little. Well, again, primarily we don't think – we wouldn't concede that a defendant is required to do that to, I guess… A blood-stained carpet? Who wants it back? Certainly not I. But in this case, it was made clear to the agents that they wanted back whatever they could. Ms. Ivers specifically said, you know, I would like my computer back. Well, she did get her computer back, didn't she? She did ultimately get her computer back approximately a month in, and our position would be that at that point Rule 40… I mean, that's exactly what Judge Kleinfeld is envisioning would happen. You ask for it, they gave her her computer back. Your guy didn't ask for it, and the rest was history. That's correct. They did ultimately return it, but our position is that at that point the violations had already occurred. Certainly… Let me ask you this. I'm not clear why he would have gotten it back anyway. Isn't this evidence of a crime? I mean, he'd get it back at the end of the trial and after the appeal and everything else, but in the meantime while you're awaiting trial, isn't this evidence of a crime? It was only evidence of a crime once they had done searches and located evidence. Okay. I mean, they go out there one day and they seize it. Yes. And then they do their forensic examination and they find the contraband on the computer. Correct. I mean, why would they give it back to you until after the trial's over? They're going to introduce this as evidence in the trial. Well, our argument is that they simply waited too long in order to find whether there's contraband or not. I don't believe that at all. So what? I mean, what if they took, as long as they're within the speedy trial times, they can keep it as long as they want. It's evidence of a crime. It's still, however… You have a speedy trial violation, that's a different story, but… It's still, however, the deprivation of property without knowing what's on it. Which they can do if it's evidence of a crime. But they don't know that it's evidence of a crime until they actually confirm it. Well, no, they found out, they made an initial determination that there was child pornography on it. Didn't they? After approximately a month, which would have been three times the amount of time that Rule 41 provides. And our argument is under Mitchell and Doss, it's beyond what the Fourth Amendment would allow. Didn't he tell them they had child pornography on it? He did make some admissions, but in the Mitchell case, it discusses that until you look and until you see what's on there, you don't know. We're not going to hold things forever if nobody asks for them back. I mean, suppose they did take a blood-stained rug. Well, they don't know until they test whether it's blood from the murder or blood because somebody had a bloody nose. But if nobody asks for it back, what would be wrong with holding on to a blood-stained rug until the trial and appeal and retrial and everything else were all done? Your Honor, under those circumstances, I would, without having thought about that particular hypothetical, I would argue that a blood-stained rug is a different item than a computer, which may or may not have any information on it. I don't know about that. I've caused blood stains from a bloody nose. I guess most of us probably have. But it may be evidence, it may not be. And there's a whole lot of good rug there that you might use for patches or something. Well, and I guess the other issue in looking into various cases that discuss computers, and I'm thinking of Payton and comprehensive drug testing, some of those. I'm more focused on getting it back than the computer. I share your concerns about computers. It has your whole life on it, not just whatever may be contraband. But all the decisions are against me on that. I guess it would come down to the argument that we're making that in this case, where there was a violation of Rule 41, that we don't believe that a defendant is required to protect their Fourth Amendment rights. You don't have to ask. You don't have to make a motion. There's a constitutional violation that pops up all by itself when the police don't return your property in a reasonable time. I think that's correct. I mean, well, Rule 41 has this procedure, and presumably that procedure is a useful one in that it allows people who perhaps haven't been charged yet, a vehicle to ask for their things back to prevent an ongoing violation. I don't believe that no violation occurs up until a Rule 41 motion is made. I'm not aware of any case law that states that. And I'll reserve the remainder of my time. Thank you, Mr. Cable. Good morning. May it please the Court. Good morning. My name is Joe Darig, and I'm representing the United States, along with Assistant United States Attorney Stephanie Van Marder, who is seated at the Council table. There are three issues properly before this Court. First, whether the warrant was particular. Second, whether the defendant was in custody and was interviewed at his home. And third, whether the time it took to do the initial scan off-site of the seized hard drives, that one-month delay was unreasonable, or the subsequent 16 months it took to do the full forensic analysis was unreasonable and would warrant suppression. Since this Court is focused mainly on the delay, I'll turn to that issue presently. The reasonableness of a particular delay is reviewed on the totality of the circumstances. And each component of the delay is reviewed separately. So the one-month delay here to find and confirm that there was child pornography on the computer is a separate analysis from whether the time it took them to determine how many images of child pornography were on the computer, that amount of time, the 16 months to do that. Could you say something about whether the discussion in his home was custodial? Yes, Your Honor. What's the best case for it not being custodial? He's alone with the agents, and they didn't tell him he was free to leave. I believe the best case is Benghazi, United States v. Benghazi. That case was a close call, and that was in an office space. The defendant was presented with evidence of his crime here. The defendant was not presented with evidence of his crime. But the circumstances are similar enough that this Court should also find, as the District Court found under the totality of the circumstances, that it was not in custody. Didn't they tell him, in our case here, didn't they tell him he was not under arrest? That's correct, Your Honor. They told him he was not under arrest, he could go wherever he liked, that he could end the interview at any time. The District Court made those findings. And he, in fact, was not arrested even after he did make incriminating statements. He had no handcuffs? Never touched. I think that was a large factor that the District Court relied on. They found that he was... Living room surroundings. And then an agent sat right in front of him and blocked his way out for the whole interview, right? Your Honor, an agent did sit directly across from him, Agent Floyd, who was in plainclothes without a gun drawn. But he was requested to do so by the defendant. The defendant had a hearing deficiency and would like the agent to sit across from him so that he could read his lips and to supplement that hearing deficiency. The agent was simply trying to make the defendant as comfortable as possible by taking that position. No one was guarding the door. No one was isolating the defendant to any extent. This Court, since Miranda was decided by the Supreme Court, has looked at that isolating factor as a key determination. Here, the defendant was allowed to talk with his wife on the telephone during the interview. He was told he could go wherever he liked. He was not restrained. He simply wasn't isolated to any extent that would be associated with formal arrest. Turning to the delay issue, there are three reasons it's not unreasonable in this circumstance. First, the hard drives were seized pursuant to a valid warrant, which the district court found and the defendant conceded was based on probable cause. Second, looking at each component of the delay, the initial one-month time to determine that child pornography was on the seized hard drives was not an unreasonable length of time. Moreover, since the defendant had admitted there was child pornography on the computers or on the hard drives, his possessory interest was diminished at that point. Second, that 16 months to find out how many images of child pornography were on the computer, the 16 months to do the full forensic analysis, at that time it's the government's position that he no longer has a possessory interest in those hard drives which contain contraband and cannot be returned. Third, and most importantly, to say that a delay is unreasonable, you have to be adversely affected or a defendant has to be adversely affected. Here the defendant candidly admitted that he suffered no adverse effect. He was not prejudiced. He was able to conduct his daily activities. The district court found that he was able to check his e-mail, interact with his family members, and he wasn't adversely affected. Moreover, the Supreme Court has acknowledged when an individual doesn't ask for the return of the property, that he cannot maintain a delay challenge or that his possessory interest has been adversely affected. I see that I'm running short on time. If this Court doesn't have any further questions on any of the other issues, I'd be happy to submit those on the briefs. I would simply ask that this Court affirm the district court's decision. Judge Fieser, do you have any questions? Thank you, Mr. Garrett. Thank you. Mr. Campbell, back to you, sir. Thank you, Your Honor. To touch on some of the custody issues which were raised briefly, the notion that Mr. Ivers wasn't presented with evidence of his crime I think is completely inaccurate. In fact, Special Agent Floyd spent five to ten minutes explaining why they were there, excerpts 92, 93. They went over the warrant, discussed the undercover agent getting info from his computer via LimeWire. Agent Floyd had a set list of questions that he presented. They asked about encryption, passwords, which computers had contraband, discussed the number of images that would be found, excerpts 102 to 103, and discussed LimeWire excerpt 142. So he clearly was, the details of the offense were clearly presented to him. While he was told that he wasn't arrested, there were four officers there, they were armed. It was unclear whether they had used their guns to clear the house or not. It wasn't 100% certain. And while this was his home, I'd point the Court to U.S. v. Craighead where there's a discussion regarding the issue of whether someone is free to leave the scene of an interrogation or whether that interrogation actually occurs in their home. You know, at Craighead they put the guy in a storage room or some remote room. Correct. I'm not saying the facts are 100% the same. Here the guy is in the comfort of his own living room. He's not taken to a back room someplace. No, he was not in a closet. He was sitting in the living room, but as the Court had discussed, it's a relatively small apartment and the officer is sitting very close to him. And that agent never told him that he could leave the residence. Agent Floyd just said that he assumed that he wouldn't want to leave and he never told him. He told him he could not leave the residence. I don't believe there's any testimony that anybody said you must stay. He was never threatened by use of a firearm either, was he? Certainly not during the interrogation. As I said, it was a little bit unclear whether he may have seen them as they were clearing the house. But no, they didn't hold a gun at him or anything like that. And just to briefly comment regarding the delay, certainly Mr. Ivers and his wife had possessory interest in items which were taken innocently. That would include the notebook and numerous computer items. As to the adverse effect, the government did claim that there was no adverse effect on Mr. Ivers. However, there was testimony that family photos, banking records and the like were on that computer. He was deprived of those. So while he may have been able to get on with his life, as we discussed already, computers contain a wealth of information and he was certainly deprived of that. I see my time is up. Thank you, Mr. Campbell. Thank you. And thank you, Mr. Degg. Do I understand you're a law student, Mr. Degg? Yes. Well, you did a terrific job. Thank you very much. The case just started. You just submitted it.
judges: Beezer, Kleinfeld, Silverman